UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

GEORGE JARVIS AUSTIN, Plaintiff

**SWORN-AFFIDAVIT: MR. AUSTIN NEVER GAVE CONSENT AS MANDATED BY EQUAL PROTECTION (14th AMEND; TITLE VI)AND 42 USC 1981 (13th AMEND.)** *ONGOING VIOLATIONS; COMPARE:* www.senate.ca.gov/media/20130814_267/video

v.

GEORGETOWN UNIVERSITY, et. al. Defendants.
(*Federal Tax Identification Number: 53-0196603*)

Case No. **4:23-cv-05836-YGR (LJC)**

**George Jarvis Austin, Plaintiff (Self-represented)**
**2107 Montauban Ct., Stockton, CA**
**209.915.6304,**
**gaustin07@berkeley.edu**

**Note:  Mr. George Jarvis Austin is an *admitted* Georgetown student, filing complaint(s) about Georgetown's *ongoing* 1. Equal Protection 2. 42 USC 1981 3. Deceit, False Promises, Misrepresentations, Omissions and Actual Fraud (with Malice) 4. Negligence and 5. Bad Faith violations of his rights (including fundamental violations of privacy, contract, and publicity rights as well as those enumerated above) as witnessed by over 50+ separate persons.  As a Pro Se Litigant, and individual person, Mr. Austin upholds, and reminds of, his as well as Georgetown's ongoing duty to privacy (*and other enumerated duties*) throughout the litigation, or settlement, phases of this legal process with *$10 - $15* million *minimum* Demand depending on structure, context and timing).**

**Mr. Austin is a whistleblower; As part of providing 'notice' of documented formal complaints to Georgetown ideaa@georgetown.edu,  generalcounsel@georgetown.edu, presidentsoffice@georgetown.edu, media@georgetown.edu, privacy@georgetown.edu, visualidentity@georgetown.edu, lawdeanofstudents @georgetown.edu, (showing *"deliberate indifference; discriminatory animus")* included 50+ outside expert 'witnesses' including  ocr@ed.gov, privacyTA@ed.gov, studentaid@ed.gov, and whistleblowercoordinator.oig@ed.gov, in real time.**

NOTE: Mr. Austin's (Plaintiff's, self-represented with limited resources) technology is not currently allowing the showing of line numbering although he has repeatedly attempted to correct the technological issue (it is unintentional, and *shall be corrected as soon as able*)  Erickson v. Pardus, 551 U.S. 89, 94 (2007)) "a pro se complaint, .. must be held to less stringent standards than formal pleadings drafted by lawyers.")

**SWORN AFFIDAVIT: MR. AUSTIN *NEVER* GAVE GEORGETOWN CONSENT, *WRITTEN (AS MANDATED) NOR OTHERWISE*, THUS HIS FEDERAL, EQUAL PROTECTION (14th AMEND.; CIVIL RIGHTS ACT OF 1964; TITLE VI) AND 42 USC 1981 RIGHTS TO CONTRACT (13th AMEND.) HAVE BEEN AND ARE CONTINUALLY BEING VIOLATED (TO DATE). 3;15;17 *COMPARE (CONSENSUAL)* www.senate.ca.gov/media/20130814_267/video**

**(ESPECIALLY PROVIDED DOCUMENTED *ONGOING* FORMAL COMPLAINTS; GEORGETOWN'S DEMONSTRATED DELIBERATE INDIFFERENCE ('WHISTLEBLOWER") PRE & POST SERVICE OF PROCESS DCKT#14)**

### 1.   SWORN AFFIDAVIT: MR. AUSTIN NEVER GAVE CONSENT

"But, let your communication be, Yea, yea; Nay, nay"
-   **Matthew 5:37**

1.      Mr. Austin never gave consent (written or otherwise) 3;15;17; Never was

*asked* for the opportunity to provide consent; Georgetown just took, exploited, and

profited in violation of his Constitutional rights to contract and current applicable

law with the *ongoing* attitude, pattern, policy and practice of an enslaver.



Defendant Georgetown went out of their way to violate their own policies, student

contract, standard(s) of care, the Constitution (including Equal Protection Clause;

section 1981), and Current law, to exploit Mr. Austin's person, rights, and

likeness.3;15;17.  Mr. Austin notes for the Court that Defendant Georgetown has

provided its own Affidavit in its written admission of non-consensual business (See

Mitch Bailin's letter on both FAC introduction sec. XIX; & FACTS para 60; ) use of

Mr. Austin's photo which is in direct violation of applicable laws, its own

policies-contract, and the Constitution including 42 USC 1981 right to contract.

2.      Mr. Austin was previously 'consensually' recorded by other organizations for

non-commercial, government, use as part of his job responsibilities *knowingly, and*

*consensually,* in the California Senate; Capital Fellows but has never experienced

the combined illegal audacity of a Defendant's admitting their violations along with

their publicly hypocritical (and illegal) exploitation for business use (with expressly

discriminatory *ongoing* conduct). Compare (Consensual; Knowing use) **www.senate.**

**ca.gov/media/20130814_267/video**; As Mr. Austin articulated in his FAC para. 74-77;

111-112:

> "74.     Taking persons, or human beings, without consent is kidnapping, or enslavement.
> See e.g. Amistad (written decades before the 13th, 14th or 15th Amendments' Constitutional
> enshrinement, 16 years before Dred Scott [most racist opinion which helped directly spark
> the Civil War within 5 years of its ruling,] argued by 1 of 2 non-slave holding ex-Presidents of
> the United States, at the time, already recognizing the personhood, and fundamental rights
> of Black men and persons, including the right to self defense, even against White Corporate
> for-profit enslavers per La Amistad) The United States v. the Amistad, 40 U.S. 518 (1841)
> See Dckt #8-74 Stripping rights, or reducing a human being to anything less than a full
> human being, with all rights and privileges is enslavement; barbarity.  Sex without consent
> is rape. Taking another's Property without consent is theft or conversion.
> 75.      Under current law these are principles commonly understood, as is the legal, and
> moral, liability of a world renowned university, in the business of teaching law, knowing (*by
> its own written admissions* www.georgetown.edu/privacy-policy/;
> publicaffairs.georgetown.edu/communications/policies/policy-for-filming-at-georgetown-unive
> rsity/) that it is illegal to take, and make public, an up close photo without *prior written*
> *authorization agreement,* and consent, of an admitted student: See Dckt #8-75;
> studentprivacy.ed.gov/faq/faqs-photos-and-videos-under-ferpa

76.     Georgetown itself has made this argument in Federal Court (*with D.C. Circuit's status and prestige among American federal courts generally considered second only to the U.S. Supreme Court*): See Dckt #8-76 ; GEORGETOWN COLLEGE v. D.C. BRD., ZONING ADJ, 837 A.2d 58, 79 n.21 (D.C. 2003);  Moreover, it is even more illegal to then use that photo to publicize, market, and make public for pecuniary gain Mr. Austin's privacy, and publicity, rights protected image, likeness or close up photo. Yet, Georgetown did so knowingly, and willfully (despite their own Federal Court arguments against being *forced* to disclose this type of data, or information), and even after admissions of their initial wrongdoing and still proceed, to date, in a pattern of 1. Equal Protection, 2. 42 USC 1981 3. Deceit 4. Negligence and 5. Bad Faith to Mr. Austin's detriment (without repentance, nor correction to Mr. Austin's ongoing legal injuries proximately caused by Georgetown);

77.     Unfortunately, for Georgetown, they have chosen to treat Mr. George Jarvis Austin, an admitted student, Black man, person, and human being, in an inferior manner as compared to similarly situated non-Black male admitted students, *repeatedly and ongoingly*…….

111.    Georgetown *publicly* admits, and knows, that written authorization requires a. Mr. Austin's *prior* notice of his picture being taken, b. *prior* notice of purpose, c. *prior* notice of commercial or business use, d. *prior* presentation of written contractual agreement to consent to business or commercial use, e. *prior* Georgetown General Counsel approval of form and f. his signature consenting to it *prior* to its use.  Georgetown *admits* it had none of the above from Mr. Austin.  Georgetown's first acknowledgement of its use was in the 2019 letter after the fact of Georgetown's exploitation without Mr. Austin's consent (and, after lying to Mr. Austin previously). See e.g. fairuse.stanford.edu/overview/release -agreements/ See also e.g. www.contractscounsel.com/t/us/ authorization-agreement See also e.g. www.rocketlawyer.com/business-and-contracts/intellectual-property/ releases-and-licensing/legal-guide/when-you-need-a-photo-release#use-of-likeness-forms-and-photo-release-forms (*Making money from the pictures you take … requires a contract; A Photo Release Form is needed whenever you wish to use another person's likeness. Likeness, in a legal sense, is one's appearance or reputation, and without a signed model release, the person photographed owns that likeness.*)  See also e.g. Harper v. United States Seafoods LP 278 F.3d 971 (9th Cir. 2002): See Dckt #9-111  No offer, no acceptance, no signature (per Georgetown's mandatory signed written authorization requirement), then no contract and thus Georgetown's legal violation.

112.    Georgetown went out of its way to violate every related Georgetown *publicly listed* policy, and the law (including mandatory written authorization agreement) while exploiting Mr. Austin's image, and likeness, for business purposes to *intentionally and* literally deprive Mr. Austin's right to contract under 42 USC 1981 because he is a Black man and admitted student, while providing unfair advantages with limited resources to similarly situated non-Black male, or White, students."

3.     Notice as Mr. Austin Won (along with 17 others) a top 10 out of 820+, elite,

uber- competitive Senate fellowship (1 of 64 Capital Fellowship winners; *CA Senate*)

his consent from beginning was respectfully asked for (even for something

non-commercial, non-business, and in the public-government service-interest)  See

e.g. https://www.youtube.com/watch?v=FWCleEPIPK4 ("Capital Fellows Is Tops

Again; YouTube · Sacramento State; Nov 29, 2012")  From the beginning, and with

each different use of his name-photo-likeness, Mr. Austin's express consent was

sought not just directly with the Senate-Legislature; Capital Fellows organizations,

but with each antecedent or auxiliary announcements ( as well as with the potential

breadth and depth of uses of likeness *prior* to their use).  See e.g.

> "The now-25-year-old, along with fellow Stockton native George Austin, is receiving the
> opportunity to be at the forefront of state politics for 11 months starting in October after
> being chosen to be among 18 Senate Fellows as part of the state's Capital Fellows
> Program….. But being chosen for the program is no easy task…..The Capital Fellows
> program has twice been named one of the top 10 best internships alongside the likes of
> NASA, the Smithsonian Institution and Google Inc. Vault.com, a career-planning website
> that gave the Capital Fellows that top 10 placing out of 821 internship programs, bases its
> high-ranking selections on the all-around experience interns receive…."It's a rigorous
> program," Bunch said. "It's like a yearlong training for them, but they're not only doing an
> internship, they're also taking graduate courses."...There were more than 1,300 applications
> for the program each of the past two years. Only 64 people are chosen for the entire
> program."
>
> -   www.recordnet.com/story/news/2012/09/08/just-one-fellows/ 49419856007/

 



4.     As articulated above, Mr. Austin Won a Fellowship in the top 10 out of 820+

(in CA Senate; most competitive entry less than 4% acceptance rate, my year, for

that program, 1 of 18 selected winners (1 of 2 *winners* out of that area)

www.recordnet.com/story/news/2012/09/08/ just-one-fellows/49419856007/  was

unavailable for press interview at the time but celebrated and honored publicly in

the piece of over 400 elite competitors nationwide, declined automatic job offer as I

gave my word to another commitment and already deferred for a year).   Mr. Austin

was asked ahead of time from colleagues and supervisors to use name, image, or

likeness in Senate Daily File (see below), California Channel Committee Recordings

(see e.g. www.senate.ca.gov/ media/20130814_267/video), Capital Fellows Video (see above; see below screenshot) which appears on Google search "Capital Fellows Still Tops," Respective newspaper announcements, etc.  See below examples:











### SENATE GOVERNANCE & FINANCE COMMITTEE
#### Senator Lois Wolk, Chair

**BILL NO:** AB 458                               **HEARING:** 8/14/13
**AUTHOR:** Wieckowski                            **FISCAL:** Yes
**VERSION:** 2/19/13                              **TAX LEVY:** Yes
**CONSULTANT:** Austin

*INCOME TAXES: DEDUCTIONS: PUNITIVE DAMAGES*

*Repeals authority to deduct punitive damages on personal and corporate tax filings.*

#### Background and Existing Law

Current law authorizes individuals and corporations to file tax deductions for the payment of monetary damages in legal cases. Under existing law plaintiffs can seek "punitive" or "exemplary" damages in legal cases where the defendant is guilty of "oppression, fraud, or malice." "Malice" means conduct which is intended by the defendant to cause injury or despicable conduct that is carried on with a willful and conscious disregard of the rights or safety of others. "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights. "Fraud" means an intentional mis-representation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

California courts hold that punitive damages punish the defendant and deter similar conduct. The goal of deterrence of similar conduct is both for the specific defendant who may repeat or continue offensive behavior and to other potential parties who may commit similar offenses. Punitive damages are not intended to compensate a plaintiff unlike compensatory damages, which are intended for compensation.

The Book of Approved Jury Instructions (BAJI) provides that a jury should con-sider two factors to determine the amount of punitive damages to award:
- The reprehensibility of the defendant's conduct.
- The amount of punitive damages, which will have a deterrent effect on the defendant in the light of defendant's financial condition.

In addition, a defendant may ask that a jury be instructed to consider that the punitive damages bear a reasonable relation to the injury, harm, or damage actu-ally suffered by the plaintiff.





5046.

**Environmental Quality**—(9)—Hill (Chair), Gaines (Vice Chair), Calderon, Corbett, Fuller, Hancock, Jackson, Leno and Pavley. Chief Consultant: Rachel Machi Wagoner. Consultants: Rebecca Newhouse and Joanne Roy. Assistant: Sue Kumpulainien. Phone: (916)651–4108. Room 2205.

**Governance and Finance**—(7)—Wolk (Chair), Knight (Vice Chair), Beall, DeSaulnier, Emmerson, Hernandez and Liu. Staff Director: Gayle Miller. Consultants: George Austin, Toby Ewing, Colin Grinnell, Samantha Lui and Brian Weinberger. Assistants: Marisa Lanchester and Krimilda McKenzie. Phone: (916) 651–4119. Room 408.

**Governmental Organization**—(11)—Wright (Chair), Vacant (Vice Chair), Berryhill, Calderon, Cannella, Correa, de León, Galgiani, Hernandez, Lieu and Padilla. Staff Director: Arthur Terzakis. Consultant: Paul Donahue. Assistant: Brenda K. Heiser. Phone: (916)651–1530. 1020 N Street, Room 584.

**Health**—(9)—Hernandez (Chair), Anderson (Vice Chair), Beall, de León, DeSaulnier, Monning, Nielsen, Pavley and Wolk. Staff Director: Melanie Moreno. Consultants: Scott Bain, Vincent D. Marchand, Tanya Robinson–Taylor and Katie Trueworthy. Assistants: Dina Lucero and Alex Norring. Phone (916)651–4111. Room 2191.

**Human Services**—(6)—Yee (Chair), Berryhill (Vice Chair), Emmerson, Evans, Liu and Wright. Chief Consultant: Mareva Brown. Consultant: Sara Rogers. Assistant: Mark A. Teemer Jr. Phone: (916)651–1524. 1020 N Street, Room 521.





5.     In various other situations the obviousness of the need to ask Mr. Austin's consent before using his likeness, image, or name by organizations, and subsequent indications of likely consent are demonstrated in various examples including work IDs (Tesla Work ID below; Senate Consultant Work ID above) school IDs (Georgetown School ID), early (Kindergarten) newspaper article interview (See below), or even knowing and consented commercial use (Fox - 36th NAACP Image Awards See below), and College Graduation photo.  Notice Mr. Austin's awareness, front facing, or direct engagement to contrast with Georgetown's exploitative, right to contract violating capture, non-awareness, non-consensual choices (and *ongoing* refusal to correct).







**Jamie Foxx - 36th NAACP Image Awards - Outstanding Actor in a Motion Picture**

NAACP Image Awards · 55,883 views



"From: Ashley L Jennings <alb225@law.georgetown.edu>
To: "gaustin07"
Sent: Thursday, May 31, 2012 at 09:27:12 AM PDT
Subject: RE: 1-year Deferral Request for Capital Fellows Program- George Austin

Hi George,

This e-mail serves as official notification that your request to defer admissions to Georgetown University Law Center until Fall 2013 has been granted, and Dean Cornblatt looks forward to welcoming you to the full-time program next fall.  As mentioned in our previous correspondence, your deferment is binding and you should begin withdrawing all other pending law school applications.  Please note it is your responsibility to notify us, in writing, of any change of address during your deferment period so that we may forward future correspondence to you.

Our records indicate that your first tuition deposit (totaling $400) has been received.  This deposit is non-refundable and will be credited toward the tuition for your first year.

Your second tuition deposit will be due in June 2013.  You'll be able to find more information once we launch next year's admitted student website.

Please let me know if you have any questions, and best of luck to you in the coming year!

Warm regards,


Ashley Jennings

Assistant Manager, Office of Admissions

Georgetown University Law Center

600 New Jersey Ave., NW, Room 589

Washington, DC 20001

202.662.9010 Phone

202.662.9439 Fax

From: George Austin [mailto:gaustin07]
Sent: Wednesday, May 30, 2012 2:52 PM
To: Ashley L Jennings
Cc: Admitted Student Hotline
Subject: 1-year Deferral Request for Capital Fellows Program- George Austin

Hi Ashley,

I sent this a few days back, but I just saw in my email that there was an error while trying to send.

So I am resending just in case it was not received.  Please let me know you have received this request.

Thank you very much for your previous follow up and the guidelines you provided.

I was recently accepted into the Capital Fellows Program and would like to request a 1-year deferral.

Below is my formal request based on those guidelines.

Please let me know if anything else is needed for a successful request.

Thank you,

George


Dear Dean Cornblatt and Members of the Admissions Committee,

I am extremely excited about attending Georgetown Law School.

I look forward to the wonderful learning environment and the opportunity to grow with my classmates.

I plan to be one of the best Georgetown students and alumni in the history of the school.  To achieve this goal I want to maximize key opportunities to expand my understanding of the law, its context and its application.

One great opportunity for me to grow toward my goal is as a Capital Fellow (http://www.forbes.com/sites/susanadams/2011/03/09/the-best-internships-for-2011/).

I have been selected as 1 of 18 Senate Fellows nationally within the Capital Fellows program.  As a top 10 fellowship according to Vault & Forbes this provides a benefit both pre and post law school.  The opportunity to help draft state law and get a truly hands-on feel for one aspect of the legal and political system will be beneficial to my understanding.  It will

also help provide an additional depth of experience to add value to classroom discussions. From my research on the program, I am convinced it will be a net positive experience and a value add for Georgetown, myself and my classmates.

The Capital Fellows is an efficient 10 month paid program that would require only a year deferral to participate.

I formally request a one year deferral to grow my legal understanding through participation in the Capital Fellows Program.

I understand that deferment is binding and conditioned upon me not pursuing admissions, holding deferral, or attending another law school prior to matriculating at Georgetown Law.

I fully agree with those terms.

I am excited to be a GULC student and look forward to being able to add increased value to Georgetown, my peers and myself through participation in the Capital Fellows Program.

I have included key portions of the Senate Fellows Acceptance Letter below.

Please let me know your decision.

Thank you again for the wonderful opportunity to attend Georgetown and I look forward contributing to Georgetown's exceptional legacy.

George Austin

--------------Senate Fellows Acceptance Letter------------------------------------------------

May 15, 2012


Dear George Austin,

Congratulations! On behalf of the California State Senate and the Center for California Studies at Sacramento State University, it is my pleasure to offer you a position as a 2012-2013 California Senate Fellow.  You are an outstanding applicant, and the selection committee believes you will have much to contribute to—and benefit from—the Senate Fellowship program.  We strive to provide Fellows with a comprehensive, experiential learning opportunity that is professionally and personally fulfilling.


As is the case every year, our offer, including benefits and a number of graduate units, is contingent on final adoption and approval of funding in the state budget.  The Legislature and Governor Jerry Brown are very supportive of the program, and we are very confident in being able to fund a full class of 18 Fellows.

Senate Fellows receive a monthly stipend of $1,972 plus comprehensive health coverage and visual and dental benefits.  If you have pending student loans, repayment can be deferred during your fellowship year. The Senate program pays the tuition, books, and fees required to register as a graduate student at the California State University of Sacramento and you can earn up to 6 units of graduate student university credit.

We want to inform you of the availability of the Timothy A. Hodson Capital Fellows Assistance Fund for fellows accepted into the program. There will be one or more awards not to exceed a grand total of $5,000.  For additional information see attachment.

We look forward to working with you this year. Should you have any additional questions, concerns, or would just like to talk, please don't hesitate to contact us. You can contact David Pacheco at (916) 278-5408 or on his cell at (916) ██████. You may also reach me at (916) 278-4874.

Congratulations and best wishes!

Sincerely,

Jennifer Calbonero

Jennifer Calbonero, Program Assistant

California Senate Fellows"





---------- Forwarded message ----------
From: George Austin <gaustin07@berkeley.edu>
Date: Mon, Sep 11, 2023 at 11:51 AM
Subject: 9.11.23 - List of Previously, and Still, Unanswered Questions Re: Misstatements and Omissions
To: ideaa@georgetown.edu <ideaa@georgetown.edu>
CC: <Olabisi.Okubadejo@georgetown.edu>, emb257@georgetown.edu <emb257@georgetown.edu>,
<kilkennr@georgetown.edu>, <lawdeanofstudents@georgetown.edu>, presidentsoffice@georgetown.edu
<presidentsoffice@georgetown.edu>, vicepresident@georgetown.edu <vicepresident@georgetown.edu>

Good Afternoon, Georgetown University

1. Why did Georgetown not ask my permission before using my up close photo for advertising purposes?

2. Why did Georgetown not get my written consent, nor use of form (as reasonable expectation of privacy standards
are similar for medical and student records) for use or release of an up close photo of an admitted student for
advertising or marketing purposes?

3. Why was it materially omitted that the photo was taken, was made public, and was used without my consent, to
the person and admitted student [whose] rights were being exploited?

4. Why when I first asked Georgetown leadership, (after someone outside of the school was the first to tell me my photo was being used for that purpose) was the photo authentic, and actually being used for advertising, was it affirmatively denied, and I was lied to?

5. Why when several months later, after Mitch Bailin finally admitting that they in fact took the photo and used the photo for that purpose, did they refuse to tell how many physical brochures were sent or used in California, and elsewhere for that matter?

6. Why was that material information repeatedly omitted by Mitch Bailin and Georgetown University Leadership, and continues to be omitted to date, despite my repeated inquiries?

7. I have placed at least [5]0+ formal and informal complaints related to this specific set of topics with IDEAA and Georgetown Leadership ; why has no investigation, nor even follow up inquiry by those tasked to investigate these types of issues taken even a cursory step toward investigation nor resolution despite me being an admitted student?

Thank you,

George Jarvis Austin

6.    Georgetown knew it was supposed to get Mr. Austin's consent, the same way it knew it would need Mr. Austin to expressly enter into contract and accept their offer (see above).  Georgetown knew the same tenets of contract formation controlled under 42 USC 1981 (and Equal Protection) for mandatory written media authorization agreement (contract), per their own publicly admitted policy-contract-standard of care.  As noted for the Court in Dckt.15;17, both pre, and post, Service of Process Dckt#14 (*personally served on Georgetown University (General Counsel; Vice President Office) on 11/29/2023*) Mr. George Jarvis Austin, admitted student, documents for the Court, and shows in *real time* Georgetown's facially discriminatory pattern, and practice of deliberate indifference ("discriminatory animus") toward Black male admitted students to their detriment. This pattern and practice is different from the promulgated policy toward non-Black male, or White, admitted students to their unfair advantage.  Mr. Austin notes, the requisite information sought over 100+ separate instances to be produced by Georgetown to him, *and him only*, of a. how many brochures or other

advertisements were sent to California forum b. and when, for what time period  or how long temporally were they sent there (as well as elsewhere), *after* Georgetown exploited Mr. Austin's image for business purposes without his consent is part of relief.  Specifically, the information production is part of Injunctive relief as it is *ongoing* materially omitted information (fraud; deceit) still owed to Mr. Austin.  See embedded documents, communications, time-stamped affidavits (below).

7.      Because of Georgetown's *ongoing violations* of Mr. Austin's Federal rights, including Federal Equal Protection (14th. Amend.; Civil Rights Act of 1964; Title VI), and 42 USC 1981 (13th Amend) as an admitted student, Mr. Austin is a whistleblower (as mentioned in the complaint, and on the cover page).  As part of providing 'notice' of documented formal complaints to Georgetown  ideaa@ georgetown.edu, generalcounsel@georgetown.edu, presidentsoffice@georgetown.edu, media@georgetown.edu, privacy@ georgetown.edu, visualidentity@georgetown.edu, lawdeanofstudents @georgetown.edu, (showing "deliberate indifference; discriminatory animus)" included now over 100+ outside expert 'witnesses' including  ocr@ed.gov, privacyTA@ed.gov, studentaid@ed.gov, and whistleblower coordinator.oig@ed.gov, in real time.3;15;17  Mr. Austin included a few redacted emails (to protect privacy; contact information of witnesses) so the court themselves can see, and observe (direct evidence), Georgetown's conduct toward Mr. Austin, and Black male admitted students. 3;15;17  See Cal. Evid. Code § 410 ("As used in this chapter, "direct evidence" means evidence that directly proves a fact, without an

inference or presumption, and which in itself, if true, conclusively establishes that fact.")

8.      Mr. George Jarvis Austin notes he operates by, and practices, the principle that 'trust' is the highest currency. See e.g www.forbes.com/sites/forbesbusiness developmentcouncil/2020/08/27/ trust-is-the-ultimate-currency/?sh=47e914c57855 ; www.pwc.com/us/en/services/consulting/library/consumer-intelligence-series/trust-n ew-business-currency.html ( *Trust: the new currency for business How trust impacts business and how companies can cultivate it* ) ; bfsi.economictimes.indiatimes.com/ blog/trust-is-the-new-currency/104050659 (*Trust is the New Currency*) ; medium.com/messaricrypto/the-most- valuable-currency-is-trust-befa883c29af (*The most valuable currency is trust. It is the foundation of all exchange, however denominated. It is the foundation for all relationships.*).  Georgetown's conduct, in simultaneous violation of its own policies, its own student contract, the Constitution, Title VI, Equal Protection and Sec. 1981, doesn't just violate or break its publicly stated 'word' on the matter, but *willfully* and *ongoingly* breaks or violates the law.  This doesn't just destroy any semblance of trust for Georgetown, but highlights the lengths it would go to circumvent the law with its own Black male admitted students, and their rights in an *ongoing facially discriminatory manner* (as they themselves *publicly* described and defined them). 3;15;17



**Connected**

George J. Austin <gaustin07@berkeley.edu>

**Repeated Demonstrated Deliberate Indifference: No Written Authorization Form, Demonstrated Malice, No Consent (written, nor otherwise)+ Missing, Deprived, and Required Steps Per Manual-Policy-Law: (Repeated Anti-Black Racial Animus, displayed) [100]+ documented Formal Complaint(s) : Race & Gender (Black Man) Formal IDEAA, Equal Protection, Disparate Treatment Complaint(s) (and public notice to other Leadership). Re: 9.11.23 (12.8.23) - List of Previously, and Still, Unanswered Questions Re: Misstatements and Omissions**

1 message

George J. Austin <gaustin07@berkeley.edu>                                              Fri, Dec 8, 2023 at 2:35 AM
To: Adam Adler <Adam.Adler@georgetown.edu>, Elizabeth Decherd <elizabeth.decherd@georgetown.edu>, "GeneralCounsel@georgetown.edu"
<GeneralCounsel@georgetown.edu>, Georgetown Law Admissions <lawadmis@georgetown.edu>, Kelly Blevins <kcb27@georgetown.edu>,
"LawHousing@georgetown.edu" <LawHousing@georgetown.edu>, OCR <ocr@ed.gov>, "finfront@georgetown.edu" <finfront@georgetown.edu>,
"hotline@law.georgetown.edu" <hotline@law.georgetown.edu>, "ideaa@georgetown.edu" <ideaa@georgetown.edu>, "lawfinaid@georgetown.edu"
<lawfinaid@georgetown.edu>, "lc1275@law.georgetown.edu" <lc1275@law.georgetown.edu>, "mcb48@law.georgetown.edu" <mcb48@law.georgetown.edu>,
"media@georgetown.edu" <media@georgetown.edu>, "privacy@georgetown.edu" <privacy@georgetown.edu>, "visualidentity@georgetown.edu"
<visualidentity@georgetown.edu>
Cc: "Olabisi.Okubadejo@georgetown.edu" <Olabisi.Okubadejo@georgetown.edu>, "ale77@georgetown.edu" <ale77@georgetown.edu>,
"emb257@georgetown.edu" <emb257@georgetown.edu>, "kilkennr@georgetown.edu" <kilkennr@georgetown.edu>, "lawdeanofstudents@georgetown.edu"
<lawdeanofstudents@georgetown.edu>, "presidentsoffice@georgetown.edu" <presidentsoffice@georgetown.edu>, "vicepresident@georgetown.edu"
<vicepresident@georgetown.edu>
Bcc:

Good early morning, and Happy Friday 12.8.23, Georgetown Visual Identity, Media, and Privacy Centers, Lisa Curtis, Mitch Bailin, and Georgetown University (including IDEAA, General Counsel, and President's Office cc'd here)

I am remaining diligent in my ongoing formal complaints, notifications, and inquiry to Georgetown directly, per stated policy-contract and Equal Protection Clause, despite Georgetown's repeated displays of discriminatory animus, and deliberate indifference.

**Note: This accounts for at least my 100th+, genuine and diligent, attempt to obtain this series of 'materially omitted' information from Georgetown (with now over 100+ direct witnesses).**

Why was no Georgetown written authorization form presented to me for signature, as a Black male admitted student (as exemplified below), prior to or after photo used for business or commercial purpose; why was there no notice of photo being taken, nor notice of use for commercial purpose, nor any apology nor corrective action for violating a multitude of my rights since Mitch Bailin acknowledged business use (after the fact; see below Georgetown letter)?

See e.g. https://publicaffairs.georgetown.edu/communications/policies/policy-for-filming-at-georgetown-university/ ("You may not film a person in an identifiable manner unless you first have obtained that person's express consent. *If the person is a Georgetown student, you must use a written consent form that has been approved in advance by the Office of the General Counsel.*")

See e.g. https://static.scs.georgetown.edu/upload/kb_file/2015_release_form.pdf

"For good and valuable Consideration herein acknowledged as received, and by signing this release, I hereby give the Photographers/Filmmakers and Assigns my permission to use the Recording, and to license the Recording for use by others, in any media (including digital, electronic, print, television, film and other media now known or to be invented) in perpetuity for all commercial and non-commercial purposes. I agree that the Recording may be combined with other images, text and graphics, and cropped, altered or modified. I agree that I have no rights in or to the Recording, and all rights to the Recording belong to the Photographer/Filmmaker and Assigns. I acknowledge and agree that I have no further right to additional consideration or accounting, and that I will make no further claim for any reason to Photographer/Filmmaker and/or Assigns. I hereby release Georgetown University, and its assignees and designees, from any and all claims and demands arising out of or in connection with the use of the Recording, including but not limited to any claims for copyright infringement, defamation, invasion of privacy, or right of publicity. I acknowledge and agree that this release is binding upon my heirs and assigns. I agree that this release is irrevocable, worldwide and perpetual.

Release Information Name (print) _____ (print name)

Address _____

City _____ State _____ Zip Code _____

Country _____ Phone _____

Email _____ Date of Birth _____

Signature _____ Date _____ "

See e.g. https://communications.gwu.edu/photo-video-release

**Photo & Video Recording Release**

This release and authorization agreement ("Agreement") shall confirm that I, (insert full name in form below), (hereafter "I" or "Student"), for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, grant permission to the George Washington University ("GW" or "University") and its licensees, assignees, and other successors-in-interest all rights whatsoever in perpetuity in and to my performance, appearance, voice, and other reproductions of my likeness, name, and/or material ("Appearance") taken in conjunction with (insert name of event or photo/video project below), and to use the same or portions thereof, including making and using derivative works thereof in any medium, including without limitation, videos, online broadcasts and brochures (collectively the "Works"), for any university purpose.

I further grant to GW all rights of every kind and nature in and the results and proceeds of my Appearance. I acknowledge that GW shall be the sole and exclusive owner of all rights in and to the Works, including, without limitation, the copyright therein and all of the results and proceeds of my Appearance hereunder and shall have the right to exploit any or all of the foregoing in any manner and in any media, whether now known or hereafter devised in perpetuity ...I agree that GW shall have sole editing discretion in determining the extent and manner of use of my Appearance. Nothing herein will be deemed to obligate GW to use my Appearance or the results and proceeds thereof, in the Work or otherwise, or to produce, release or distribute the Works, or to otherwise exploit any rights granted to GW hereunder. GW shall have the right to assign this Agreement (or any of its rights hereunder) to any person, firm, partnership or corporation for any reason and without notice to Student.

I hereby voluntarily assume any and all risks, known or unknown, associated with my Appearance. I and my heirs, executors, administrators and assigns, hereby voluntarily release, discharge, waive and relinquish any and all claims, complaints, liabilities, actions and causes of actions ("Claims") against GW I agree to defend, indemnify (including any and all attorney's fees) and hold harmless GW in the event of any and all Claims, by whomever or wherever asserted. .....I have read, understand and agree to the above terms and conditions. I warrant that I have the right and power to enter into and fully perform this Agreement and to grant GW the rights herein granted. I am over the age of 18 years of age, or I have the approval of my parent or legal guardian if I am under the age of 18. I understand that this contains the entire understanding of the parties relating to the subject matter and cannot be changed or terminated without the written consent of both parties. The provisions shall be binding upon me and my heirs, executors, administrators and successors. All rights, licenses and privileges herein granted are irrevocable and not subject to rescission, restraint or injunction under any circumstances.

Name

Event Name or Photo/Video Project Title

Date

Date: Date

mm/dd/yyyy

Student Address

Email Address

Signature

Why did Georgetown violate its own mandatory written authorization agreement (contract - see above examples) policy for all students, and single out a Black male student, and subject him to a different policy to his immediate detriment violating his 42 USC 1981 right to contract, privacy, publicity and other rights?

Are you aware that because you violated my right to contract under 42 USC 1981 by expressly violating your written authorization (agreement) contract while subjecting a Black male student to inferior treatment?

Are you aware the reason for expressly stating the right to contract, for Black men, in this Country, after the Civil War, in the 13th Amendment, 42 USC 1981, is precisely because of the kind of anti-Black discriminatory conduct Georgetown did here to a Black man, in violation of the US Constitution?

Is there some type of gag order Georgetown's leadership is under (why has there been no response when your ongoing owed duties require the exact opposite conduct)?

Why was Georgetown's self-described process of obtaining written consent, and provision of notice, not followed, and egregiously violated when it came to me as a Black male admitted student, treated in an inferior manner-different than non-Black male admitted students (i.e. obvious disparate treatment)?

Are you aware that each Georgetown intentional choice to further break, or violate, your own policies, contract, and the law not only demonstrates malicious intent, but magnifies your ongoing liability?

Why has there been no formal acknowledgement of privacy violations, nor correction and disclosure of material misstatements, and omissions by Georgetown (which could have initially been included in Mitch Bailin's letter below, or thereafter per follow up questions and formal complaints)?

Why is Georgetown attempting to mark, or stamp, a Black man and admitted student, with a badge of inferiority, by intentionally depriving required services, singling out him out for inferior treatment, prior to and after admitted violations of his rights, and privacy, as well as continued fraud (material omissions; misstatements, etc.) against him without correction(s)?

Why have you displayed racial animus by not following the typical process for non-Black male similarly situated complainants?

Is there a particular point person who is most competent to handle this set of complaints beyond who is included here (as IDEAA has been completely unresponsive, at all)?

I've tried various methods: phone, email, fax (as publicly listed), why no response, steps, or even acknowledgment of complaint violating my Equal Protection (as a Black man)?

If so, please provide their contact information?

Note: this accounts for, at least, my **[100]th+** formal complaint to IDEAA, and Georgetown Leadership.

When is an acknowledgement of complaint filed emailed, or noticed, to Complainant?

Why have no steps, at all, toward investigation taken place, nor any follow up communication?

Why has Georgetown impermissibly used race to treat me, a Black man, in an inferior manner, refusing required investigative services, at all, and through action, or discriminatory non-action when action is mandated, and attempted to mark me, a Black man with a badge of inferiority (in an ongoing manner)?

"Founded in 1789, Georgetown is the Nation's oldest Catholic and Jesuit University. .....**Georgetown complains** that ... requiring it to report ....**forces the University to violate the Federal Educational Rights and Privacy Act (i.e. reasonable expectation of privacy)** of 1974 (FERPA), 20 U.S.C. § 1232g, by mandating the release of allegedly protected information regarding students who fire off campus. ....FERPA protects students' privacy interests by withholding federal financial assistance to educational institutions that ...release ...educational records" ..... Georgetown first raised its FERPA-based objections to the reporting obligations" - **GEORGETOWN COLLEGE v. D.C. BRD., ZONING ADJ, 837 A.2d 58, 79 n.21 (D.C. 2003)**







Did you see the previous questions; they are still unanswered (see below)?

Are you aware of your ongoing pattern of deception, false promises, material omissions, etc. toward me (to date I still have not been provided the requisite material information)?

How many of these were made, sent and utilized and in what capacity?  Where geographically?

Are you aware of Georgetown's repeated, disparate treatment of me, and my over 30+ (now 100+) formal complaints?

Are you aware as an admitted student, and "Complainant" I am guaranteed a "prompt, fair, and impartial investigation and resolution of grievances of discrimination, harassment, and related retaliation (I.e. disparate treatment)" per your contract, policy, and the law, was so when I first made a formal complaint, after Mitch Bailin initially admitted Georgetown's violations in writing?

1. Why did Georgetown not ask my permission before using my up close photo for advertising purposes?

2. Why did Georgetown not get my written consent, nor use of form (as reasonable expectation of privacy standards are similar for medical and student records) for use or release of an up close photo of me, an admitted student, for advertising or marketing purposes?

3. Why was it materially omitted that the photo was taken, was made public, and was used without my consent, to the person and admitted student whose rights were being exploited?

4. Why when I first asked Georgetown leadership, (after someone outside of the school was the first to tell me my photo was being used for that purpose) was the photo authentic, and actually being used for advertising, was it affirmatively denied, and I was lied to?

5. Why, when several months later, after Mitch Bailin finally admitting that they in fact took the photo and used the photo for that purpose, did they refuse to tell how many physical brochures were sent or used in California, and elsewhere for that matter?

6. Why was that material information repeatedly omitted by Mitch Bailin and Georgetown University Leadership, and continues to be omitted to date, despite my repeated inquiries?

7. I have placed at least [100+] formal and informal complaints related to this specific set of topics with IDEAA and Georgetown Leadership ; why has no investigation, nor even follow up inquiry by those tasked to investigate these types of issues or taken even a cursory first step toward investigation nor resolution despite me being an admitted student?

Thank you,

George Jarvis Austin

## SWORN AFFIDAVIT; SIGNATURE.

All above plead facts and those included as exhibits, or affidavits, are true (*with now well over 300+ witnesses included*), and as I, George Jarvis Austin personally experienced, witnessed, and observed.  These signed and sworn declarations of facts, experiences, investigations, findings, etc. are as The Department of Justice, National Institute of Justice specifies for the Legal Requirements of an Affidavit "A sworn affidavit is a voluntary declaration of facts, findings, conclusions or opinions of the declarant, given with their affirmation that the contents are also true.  The declarant or affiant swears to the veracity (truthfulness) of their statements." Further, all legal references which highlight, Mr. Austin's, plead facts as relevant, decisive, persuasive and compelling have been affirmed by the United States Supreme Court, Ninth Circuit, Northern District and California Courts.


**George Jarvis Austin**

**s/ George Jarvis Austin, Self Represented, 12/30/23**